1

2

3

4                         UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    JENNIFER K LOVETT,                        Case No.  14-cv-02844-RS

           Plaintiff,
8
                                               ORDER GRANTING PLAINTIFF'S
9        v.                                    MOTION FOR LEAVE TO AMEND
                                               THE FIRST AMENDED COMPLAINT
     OMNI HOTELS MANAGEMENT
10   CORPORATION,

11         Defendant.

12

13                        I.       INTRODUCTION

14        Plaintiff Jennifer K. Lovett has filed tort claims for damages against Defendants Omni

15   Hotels Management Corporation and Case-Dunlap Enterprises LLC.  Lovett's claims arise from

16   her stay at Omni's San Francisco hotel, where she was a guest.  While staying at the hotel, Lovett

17   took advantage of one of the benefits of Omni's Select Guest Loyalty Program:  the Get Fit Kit, a

18   package of fitness equipment for in-room use.  Among the items in the Get Fit Kit was a blue

19   Xering resistance band.  Not included were instructions or warnings about how to use the Xering.

20   Lovett misused the resistance band and tragically lost her eye as a result.  She now seeks to amend

21   her complaint to add strict-liability and negligence claims based on the theory that Omni failed to

22   provide instructions for using the band or to warn her of the risks of misuse.  This matter is

23   suitable for disposition without oral argument pursuant to Local Rule 7-1(b).

24        Omni opposes the Lovett's request, arguing that the amendment is futile because the two

25   additional claims are not viable under California tort law, that Lovett unduly delayed seeking

26   leave to amend the complaint, and that the amendments would prejudice Omni because it has

27   already filed a motion for summary judgment on the claims in the First Amended Complaint

28   (FAC).  Because the averments in Lovett's proposed Second Amended Complain (SAC) state

United States District Court
Northern District of California

claims upon which relief can be granted, and so the amendment is not futile and Omni has not

demonstrated that it will be prejudiced by the proposed amendments, Lovett's motion for leave to

amend is granted.  In addition, Omni's motion for summary judgment is denied without prejudice

as moot.  Omni may refile its motion for summary judgment if it wishes and address the two

additional claims in Lovett's complaint.

## II.        FACTS AND PROCEDURAL HISTORY

According to the SAC,[1] Omni developed a program to encourage customer loyalty by

introducing the Select Guest Loyalty Program, which gave program members the option to

exercise in their rooms by using the Get Fit Kit.  SAC ¶ 7.  Omni contracted with Case-Dunlap

Enterprises LLC (d/b/a Tic Toc the Imagination Company) to assemble, produce, manufacture,

distribute, and supply Omni with the Get Fit Kit and all its component parts.  *Id.* ¶ 8.  Lovett avers

that Omni and Tic Toc placed the Get Fit Kit, which included the Xering resistance band provided

by SPRI Products, Inc., into the stream of commerce.  *Id.* ¶¶ 8-9.  SPRI created a set of

instructions and warnings about how to use the Xering properly, but Omni and Tic Toc did not

include those instructions in the Get Fit Kit.  *Id.* ¶¶ 9-10.

Lovett was a member of Omni's Select Guest Loyalty Program when she stayed in Omni's

San Francisco hotel.  Before arriving in San Francisco, Lovett completed an online questionnaire

to indicate her preferences.  One option available to Lovett as a Select Guest was the Get Fit Kit,

which included some exercise equipment for in-room use.  Included in the Get Fit Kit was a blue

resistance band—the Xering.  Lovett avers that the Get Fit Kit did not include instructions about

how to use the Xering or warnings that users should not pull or stretch the band with their arms.

Unaware of this limitation, Lovett put the band on her feet and pulled it toward her in a rowing

motion.  The band snapped off of Lovett's feet and struck her in the left eye.  Lovett sought

medical treatment that resulted in the removal of her left eye.  Lovett avers that misuse of the

Xering was reasonably foreseeable, and therefore Omni and Tic Toc should have included

---

[1] To determine whether Lovett's additional claims are viable, the facts in her complaint must be taken as true and construed in her favor.  *See Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011), *reversed on other grounds on reh'g en banc*, 681 F.3d 1041 (9th Cir. 2012).

United States District Court
Northern District of California

1   instructions for how to use the Xering in the Get Fit Kit, and therefore the Xering was defective

2   and Omni and Tic Toc are strictly liable and/or negligent for failing to warn or instruct users.

3      On May 5, 2014, Lovett filed her complaint in San Francisco Superior Court, erroneously

4   naming Omni Hotels & Resorts as a defendant.  Shortly thereafter, on May 19, 2014, Lovett filed

5   the FAC to add Omni Hotel Management Corporation as a defendant.  Omni removed Lovett's

6   claims to federal court and filed a cross-complaint against SPRI.  Discovery commenced, and the

7   parties began taking depositions and serving and answering interrogatories.  The parties disagreed

8   about the scope of the protective agreement, which limited the number of documents Omni was

9   willing to produce to Lovett.  On July 2, 2015, Omni filed a motion for summary judgment based

10  on Lovett's FAC.  In the meantime, the parties apparently had difficulty scheduling depositions,

11  but Lovett was able to depose one of Omni's corporate directors in mid-August.  Lovett filed this

12  motion for leave to amend the FAC in late August.

13                          **III.    LEGAL STANDARD**

14     When a party seeks leave to amend a pleading, "[t]he court should freely give leave when

15  justice so requires."  Fed. R. Civ. P. 15(a)(2).  Denial of a motion for leave to amend a pleading is

16  proper only when "there is strong evidence of undue delay, bad faith or dilatory motive on the part

17  of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

18  prejudice to the opposing party by virtue of allowance of the amendment, or futility of

19  amendment, etc."  *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117

20  (9th Cir. 2013) (internal quotation marks and alterations omitted).  "[P]rejudice to the opposing

21  party carries the greatest weight," *id.* (internal quotation marks omitted), and is the "touchstone of

22  the inquiry under [R]ule 15(a)," *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th

23  Cir. 2003) (internal quotation marks omitted).  A proposed amendment is futile if the facts as

24  pleaded in the SAC fail to state a claim upon which relief can be granted under Federal Rule of

25  Civil Procedure 12(b)(6).  *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011), *rev'd on other

26  grounds on reh'g en banc*, 681 F.3d 1041 (9th Cir. 2012).

27

28                          **IV.    DISCUSSION**

3

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

### A.  Prejudice and Undue Delay

Omni complains that granting Lovett leave to amend her complaint would subject it to unfair prejudice and unwarranted delay as it has already filed its motion for summary judgment. This is not sufficient to establish prejudice.  Although this case has been pending for fifteen months, the parties have only recently begun discovery and have yet to set a trial date.  Omni's primary concern is that its pending motion for summary judgment will be moot if Lovett receives permission to file the SAC, thereby precluding it from addressing all of Lovett's claims in a single hearing on a motion for summary judgment.  Since Lovett filed her motion for leave to amend, however, the parties have agreed to continue the hearing on the motion for leave to amend and motion for summary judgment to December 17, 2015.  A single hearing being preferable and the better practice, Omni has not identified any reason why it cannot refile its motion for summary judgment addressing Lovett's new claims in time for a hearing on December 17.

Moreover, Omni was apparently aware of the possible arguments for a strict-liability theory because it referenced strict liability in its pending motion for summary judgment.  In addition, Omni's arguments against Lovett's proposed failure-to-warn negligence claim cuts against its claims of prejudice.  Omni claims that Lovett's proposed new claims fail "for the same reasons set out in the summary judgment motion," Opp'n to Mot. for Leave to Amend at 14, which suggests that Omni should have little difficulty filing a new, updated motion for summary judgment to address Lovett's new claims in short order.  Omni simply has not demonstrated that it will be unfairly prejudiced if Lovett files her SAC.

### B.  Futility

#### 1.  *The Strict-Liability Claim*

Omni advances two reasons in support of its argument that Lovett's strict-liability claim is futile.  First, Omni contends that it is not subject to strict-liability for the products, such as the Xering, it offers to guests because the California Supreme Court has held that hotels are not "strictly liable on the basis of products liability for injuries to a guest caused by a defect in the premises," *Peterson v. Superior Court*, 210 Cal. 4th 1185, 1210 (1995).  In *Peterson*, the court rejected the plaintiff's contention that hotels or landlords are strictly liable for bathtubs that are too

slippery. *Id.* 1199.  To reach this conclusion, the court relied on the premise that a hotel "guest cannot reasonably expect that the owner [of the hotel] will correct any defects of which the owner is unaware and that cannot be discerned by a reasonable inspection." *Id.* at 1206.

  *Peterson* does not establish that Lovett cannot succeed on her strict-liability claim. Unlike the plaintiff in *Peterson*, Lovett has not alleged that defects *in the premises*, like a bathtub, shower, ceiling lamp, or carpet, which would have existed prior to the hotelier's acquisition of the building.  Instead, Lovett avers that Omni was part of the chain of distribution that placed the defective Xering into the stream of commerce and had the ability to identify defects in the process before doing so.  Compl. ¶ 29.  The California Supreme Court expressly did not address "whether different considerations would apply in the event the landlord or hotel owner had participated in the construction of the building." *Id.* at 1200.  Instead, the court noted that if attached in that circumstance, the hotel owner would be strictly liable owing to its "status as a builder who engaged in the business of constructing (i.e. manufacturing) rental properties." *Id.* at 1200.  Lovett has averred sufficient facts to establish that Omni distributed the defective Xering to its guests; that it had an ongoing business relationship with the manufacturer of the Xering; and that Omni had the opportunity to inspect the Xering, identify potential risks, and encourage SPRI and Tic Toc to manufacture a safer ring.  Each of these facts distinguishes Lovett's case from *Peterson*.

  Strict products liability potentially may be appropriate in the circumstances of Lovett's case.  Under California tort law, "a retailer of manufactured goods is also strictly liable." *Id.* at 1198.  "Retailors like manufacturers are engaged in the business of distributing goods to the public" and "are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products." *Id.* (internal quotation marks omitted). "[W]hether to apply strict liability in a new setting is largely determined by the policies underlying the doctrine." *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 362 (2012).  Only those entities "in the chain of distribution of the defective product" who are "responsible for placing an injury-producing product into the stream of commerce" have a duty to warn users of potential risks. *Id.* at 354. Whether the defendant and the manufacturer have a "continuing business relationship" with one another such that the defendant can "exert pressure on other manufacturers to make their products

safe, whether the defendant derives economic benefit from the sale of the products, and whether the defendant can share in the cost of making the product safe are three factors courts have considered to determine whether strict liability applies.  *Id.* at 363 (internal quotation marks omitted); *Shields v. Hennessy Indus., Inc.*, 205 Cal. App. 4th 782, 793 (2012), *as modified* (May 3, 2012).  Courts also consider whether the defendant "can be expected to possess expert knowledge concerning the product being produced or sold."  *Peterson*, 10 Cal. 4th at 1209.

Lovett has averred facts that establish Omni had an ongoing business relationship with the manufacturer of the Xering and the Get Fit Kit.  Omni commissioned the Get Fit Kit, which included the Xering from Tic Toc and SPRI, assembled the kits, and distributed the kits to hotel guests.  *Id.* ¶¶ 8-9.  These alleged facts support the reasonable inference that Omni had an ongoing business relationship with the manufacturer of the Xering, enabling Omni to "exert pressure upon the manufacturer to make the product safe" because Omni could always contract with a different manufacturer of a safer resistance band.  *Id.* at 1200.  Omni had the opportunity to inspect and test the Xering to identify any safety concerns before deciding to include it in the Get Fit Kit.  In addition, Lovett has averred that Omni derived economic benefit by distributing the Get Fit Kit to the members of its loyalty program in the form of a consistent customer base.  Compl. ¶ 7.  Although Lovett's proposed SAC does not aver that Omni possessed superior knowledge about the risks and benefits of resistance-band designs, she has asserted sufficient facts, which if proven, establish that Omni was a distributer of the Get Fit Kit and the Xering.

Second, Omni contends that Lovett's attempt to add a strict-products-liability claim is futile because Omni is a service provider, not a distributor or retailer, and therefore strict liability is inapplicable to the products used in furtherance of the service.  "The doctrine of strict liability in tort applies to producing and marketing enterprises responsible for placing *products* in the stream of commerce."  *Pierson v. Sharp Mem'l Hosp., Inc.*, 216 Cal. App. 3d 340, 344 (1989).  Strict liability attaches to "transactions whose primary objective is obtaining services," but not "where the transaction's service aspect predominates and any product sale is merely incidental to the provision of the service."  *Id.*

Recently, the California Courts of Appeal have addressed whether gyms are strictly liable

United States District Court
Northern District of California

for defective exercise equipment.  *See Grebing v. 24 Hour Fitness USA, Inc.*, 234 Cal. App. 4th 631 (2015); *Ontiveros v. 24 Hour Fitness Corp.*, 169 Cal. App. 4th 424 (2008).  In both cases, however, the plaintiffs had signed service agreements, which established that primary objective of the membership was to provide and to receive fitness services.  *Grebing*, 234 Cal. App. 4th at 429-30; *Ontiveros*, 169 Cal. App. 4th at 434.  The SAC does not include any averments to establish whether Lovett and Omni entered into a service agreement or, if they did, whether the predominant purpose of the agreement was to provide a service.  There is therefore nothing in the SAC that suggests her strict-liability claim is futile.  Of course, Omni may revisit the legal issues with the benefit of an evidentiary record if it wishes.

> *2.  The Negligence Claim*

Omni opposes the addition of a new negligence claim on the basis that it is duplicative of the comparable claim in the FAC and futile for the reasons expressed in its motions for summary judgment.  Lovett's negligence claims are not, in fact, identical; she offers two distinct negligence theories of liability.  Omni, if it so elects, may challenge the viability of Lovett's negligence claims in a renewed motion for summary judgment.

## V.      CONCLUSION

Omni has not demonstrated that it will be prejudiced if Lovett's motion for leave to amend the FAC is granted or that the claims she seeks to add are futile.  Accordingly, Lovett's motion for leave to amend is granted.  Because the FAC is no longer operative, Omni's motion for summary judgment is denied without prejudice as moot.  There remains plenty of time for Omni to answer the SAC and to renew its motion for summary judgment and address all of the claims in the SAC.

**IT IS SO ORDERED.**

Dated:  October 8, 2015

RICHARD SEEBORG
United States District Judge